**Opinion issued August 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00464-CV

———————————

**UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON,**
**Appellant**

**V.**

**TELICIA OWENS, Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-07534**

---

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, University of Texas Health Science

Center at Houston ("UTHSCH"), challenges the trial court's order denying its plea

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

to the jurisdiction and motion to dismiss the health care liability claims[2] brought against it by appellee, Telicia Owens, in her suit for negligence and gross negligence. In its sole issue, UTHSCH contends that the trial court erred in denying its plea to the jurisdiction and motion to dismiss because UTHSCH did not have notice of Owens's claims within six months of the allegedly negligent medical care and treatment that gave rise to Owens's claims.[3]

We reverse and render.

## Background

This is the third appeal that we have heard in this case.[4] In 2012, Owens brought health care liability claims against certain health care providers who treated her in 2010. In her original petition, Owens alleged that on February 6, 2010, she went to the Emergency Department at Memorial Hermann, complaining of a severe headache. She was diagnosed with migraine, tension headache, and "headache associated with sinuses," but "[n]o diagnostic testing was done to rule out any internal problems." On February 10, 2010, Owens returned to the Emergency Department at Memorial Hermann, complaining of the "same persisting symptoms" and was diagnosed with a headache and sinitus. Again,

---

[2] *See id.* § 74.001(a)(13).

[3] *See id.* § 101.101(a), (c).

[4] *See Totz v. Owens*, No. 01-16-00753-CV, 2017 WL 2178890 (Tex. App.—Houston [1st Dist.] May 18, 2017, no pet.) (mem. op.); *Owens v. Handyside*, 478 S.W.3d 172 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

2

"[n]o diagnostic testing" was performed. On February 21, 2010, Owens returned to the Emergency Department at Memorial Hermann, complaining of headache and blurry vision. During that visit, Kenneth A. Totz, D.O., FACEP, and another doctor treated her and diagnosed her with a headache. No diagnostic testing was performed.

Subsequently, on February 24, 2010, Owens sought treatment at another hospital where doctors determined that she was suffering from a "head bleed." At that time, Owens was admitted into the Intensive Care Unit and later discharged.

Thereafter, on April 22, 2010, Owens went to third hospital complaining of "sudden blindness," which resulted in "[the] placement of a lumbar shunt." On May 14, 2010, she returned to the third hospital complaining of problems with her sutures, "shunt leak[age]," blurred vision, and a headache. On May 17, 2010, Owens again returned to the hospital complaining of a headache, chest pain, and neck stiffness. Her shunt was infected, and it was removed. Further, it was determined that Owens was suffering from "MRSA—Methicillin Resistant Staphyloccus Aureus."

Owens alleged that, as a result of certain undiagnosed "internal problems" at the aforementioned hospitals, she ultimately sustained permanent damage to her optic nerves and became "completely blind in both of her eyes." And she continued to suffer "ongoing damages, including pain and mental anguish."

Owens did not specify in her original petition the medical cause or reason for her loss of vision and residual damage and pain, but she brought direct-liability and vicarious-liability claims against certain health care providers for negligence and gross negligence.

To support her negligence and gross negligence claims, Owens, on or about May 29, 2012, filed and served upon the health care providers, including Dr. Totz, a medical expert report. The health care providers each answered and sought various relief under the Texas Medical Liability Act's expert-report provision.[5] Further, Dr. Totz, in his answer, asserted:

> [T]he rights and protections afforded to him pursuant to Texas Civil Practice & Remedies Code [section] 101.106, because this [instant] suit [was] based on [his] alleged conduct within the general scope of his employment with [UTHSCH], a governmental unit, and th[e] case could have been brought against the governmental unit.[6]

After the two previous appeals in this case, Owens's health care liability claims were eventually remanded to the trial court for further proceedings.[7] On August 9, 2017, Dr. Totz filed a motion to dismiss, pursuant to Texas Civil Practice and Remedies Code section 101.106(f), asserting that the Texas Tort Claims Act ("TTCA") provides that the employee of a governmental unit must be dismissed from a suit, and the governmental unit substituted as the defendant in his

---

[5] *See* TEX. CIV. PRAC. & REM. CODE § 74.351.

[6] *See id.* § 101.106.

[7] *See Totz*, 2017 WL 2178890, at *5; *Owens*, 478 S.W.3d at 193.

4

place, when the suit is "based on conduct within the general scope of that [governmental] employee's employment" and when suit "could have been brought . . . against the governmental unit."[8]  According to Dr. Totz, at the time that Owens received the allegedly negligent medical care and treatment provided by him on February 21, 2010, he was an employee of UTHSCH, a governmental unit.

Owens did not respond to Dr. Totz's section 101.106(f) motion to dismiss but instead amended her original petition.  In her second amended petition, Owens removed Dr. Totz as a defendant and substituted, in his place, UTHSCH, noting that "UTHSCH[] is [the] governmental unit[] who employed [Dr. Totz], a physician licensed to practice in the State of Texas."

In her third amended petition, Owens alleged, related to UTHSCH, that on February 21, 2010, when she returned to the Emergency Department at Memorial Hermann, complaining of headache and blurry vision, Dr. Totz, "who was employed by . . . UTHSCH" at the time, and another doctor provided her with medical care and treatment.  At that time, Owens was diagnosed with a headache, but no diagnostic testing was performed.  And because Owens later sustained permanent damage to her optic nerves and became "completely blind in both of her eyes," due to certain undiagnosed "internal problems," Owens brought

---

[8]  *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f).

direct-liability and vicarious-liability claims against UTHSCH for negligence and gross negligence. According to Owens, UTHSCH "is responsible for her injuries jointly and severally under the doctrines of respondeat superior, corporate negligence, apparent or ostensible agency, agency by estoppel, and violation of non-delegable duties performed by" Dr. Totz.

UTHSCH answered, generally denying Owens's allegations and asserting certain affirmative defenses, including sovereign immunity. UTHSCH then filed a plea to the jurisdiction and motion to dismiss, arguing that the trial court lacks subject-matter jurisdiction because Owens alleged that she sustained injuries "as a result of negligent medical care and treatment rendered on or about February 21, 2010[]" by Dr. Totz; at that time, Dr. Totz was acting "in the course and scope of his employment with" UTHSCH, a governmental unit of the State of Texas; and the TTCA only provides a limited waiver of sovereign immunity. UTHSCH also asserted that sovereign immunity had not been waived as to it because Owens had failed, pursuant to Texas Civil Practice and Remedies Code section 101.101(a), to "provide [it with the required] written notice of her claims within six (6) months after the [purportedly negligent medical] treatment and care" by Dr. Totz and UTHSCH "did not have actual notice of [Owens's] claims within th[at] time frame."[9]

---

[9]    *See id.* § 101.101(a), (c).

In response to UTHSCH's plea to the jurisdiction and motion to dismiss, Owens asserted that the trial court has subject-matter jurisdiction because Dr. Totz waited "more than five years" to file his section 101.106(f) motion to dismiss; in accordance with section 101.106(f), Owens amended her petition, dismissing Dr. Totz and naming UTHSCH, the governmental unit, as the defendant in her suit; Owens had no reason to know that Dr. Totz was "an employee of a governmental unit" of the State of Texas, i.e., UTHSCH, until he filed his original answer in 2012; and August 9, 2017—the date that Dr. Totz filed his section 101.106(f) motion to dismiss—is that date that must be used to determine the deadline by which Owens was required to provide UTHSCH written notice of her claims pursuant to section 101.101(a).[10] (Emphasis omitted.) Further, because UTHSCH "was served with process . . . on September 20, 2017" and "appeared in th[e] [instant] action on October 19, 2017," UTHSCH had "actual notice of Owens'[s] [claims] within the meaning of . . . [section] 101.101[]" on or before "six months after the day that the incident giving rise to [her] claim[s] occurred."[11]

In its reply, UTHSCH asserted that the TTCA did not waive sovereign immunity in the instant case because Owens was required to provide it with notice pursuant to Texas Civil Practice and Remedies Code section 101.101; the notice

---

[10]    *See id.* § 101.101(a).

[11]    *See id.* § 101.101(a), (c).

7

requirement is jurisdictional; and UTHSCH did not have notice of Owens's claims on or before August 21, 2010, i.e., six months after Dr. Totz's purportedly negligent medical care and treatment of Owens, which occurred "within the general scope of his employment with UTHSCH on February 21, 2010."[12]

After a hearing, the trial court denied UTHSCH's plea to the jurisdiction and motion to dismiss.

## Standard of Review

We review de novo a trial court's ruling on a jurisdictional plea. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006); *City of Hous. v. Vallejo*, 371 S.W.3d 499, 501 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Villarreal v. Harris Cty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A plea to the jurisdiction may be utilized to challenge whether the plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

---

[12] *See id.*

When a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 226. We construe the pleadings liberally in favor of the pleader, accept all factual allegations as true, and look to the pleader's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). If the pleadings are insufficient, the court should afford an opportunity to replead if the defects are potentially curable but may dismiss if the pleadings affirmatively negate the existence of jurisdiction. *City of Hous. v. Guthrie*, 332 S.W.3d 578, 586–87 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Review of a plea challenging the existence of jurisdictional facts mirrors that of a matter-of-law summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Guthrie*, 332 S.W.3d at 587 ("[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). . . . By requiring the [political subdivision] to meet the summary judgment standard of proof . . . , we protect the plaintiff[] from having to put on [her] case simply to establish jurisdiction." (first, second, and third alterations in original)); *see also* TEX. R. CIV. P. 166a(c). "[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). And a court may consider evidence as necessary to

resolve a dispute over the jurisdictional facts even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226. We take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* at 228. If the defendant meets its burden to establish that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a material fact question regarding the jurisdictional issue. *Id.* at 227–28. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Id.* On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Garcia*, 372 S.W.3d at 635.

### Plea to the Jurisdiction

In its sole issue, UTHSCH argues that the trial court erred in denying its plea to the jurisdiction and motion to dismiss because it is a governmental unit of the State of Texas and "is generally immune from liability and suit" and the TTCA could only provide a waiver of sovereign immunity in the instant case if Owens had given it proper notice pursuant to Texas Civil Practice and Remedies Code section 101.101 or if UTHSCH had "actual notice" of Owens's claims within the proscribed timeframe, which did not occur in this case. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(a), (c).

10

As a general rule, the State of Texas and its governmental units are immune from tort liability unless the Legislature has expressly consented to the suit by waiving sovereign immunity.[13] *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). Whether a governmental unit is immune from liability for a claim depends entirely upon statute. *Harrison v. Univ. of Tex. Health Sci. Ctr. at Hous.*, No. 01-12-00980-CV, 2013 WL 4680407, at *2 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.); *see also Lenior v. U.T. Physicians*, 491 S.W.3d 68, 75–76 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). In the absence of a waiver of sovereign immunity, a court has no subject-matter jurisdiction to entertain a suit against a governmental unit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Kamel v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). When a trial court lacks jurisdiction to hear a cause, it must dismiss the cause and refrain from rendering a judgment on the merits. *Harrison*, 2013 WL 4680407, at *2; *Li v.*

---

[13] Courts often use the terms sovereign immunity and governmental immunity interchangeably, although they involve two distinct concepts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *Kamel v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 333 S.W.3d 676, 681 n.5 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Sovereign immunity refers to the State's immunity from suit and liability. *Taylor*, 106 S.W.3d at 694 n.3; *Kamel*, 333 S.W.3d at 681 n.5. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. *Taylor*, 106 S.W.3d at 694 n.3. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts. *Id.*; *Kamel*, 333 S.W.3d at 681 n.5

*Univ. of Tex. Health Sci. Ctr. at Hous.*, 984 S.W.2d 647, 654 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Here, it is undisputed that UTHSCH is a governmental unit. *See Lenoir*, 491 S.W.3d at 77; *Kamel*, 333 S.W.3d at 681.

The TTCA provides a limited waiver of sovereign immunity. *See Miranda*, 133 S.W.3d at 224; *Harrison*, 2013 WL 4680407, at *2. More specifically, Texas Civil Practice and Remedies Code section 101.021 states:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

Notably, the TTCA includes a notice requirement, which a plaintiff must comply with in order to take advantage of the TTCA's waiver of immunity. *See Metro. Transit Auth. of Harris Cty., Tex. v. Garza*, No. 01-18-00408-CV, 2019 WL 1523186, at *4 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, no pet.) (mem. op.);

*Univ. of Tex. Health & Sci. Ctr. at Hous. v. McQueen*, 431 S.W.3d 750, 754– (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018). The notice requirement is jurisdictional. *City of Dall. v. Carbajal*, 324 S.W.3d 537, 537–38 (Tex. 2010); *Garza*, 2019 WL 1523186, at *4. In regards to notice, Texas Civil Practice and Remedies Code section 101.101 provides:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> > (1) the damage or injury claimed;
> >
> > (2) the time and place of the incident; and
> >
> > (3) the incident.
>
> . . . .
>
> (c) The notice requirement[] provided or ratified and approved by Subsection[] (a) . . . do[es] not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

TEX. CIV. PRAC. & REM. CODE § 101.101(a), (c). A plaintiff's failure to comply with the notice provision requires the trial court to dismiss her case. *See Garza*, 2019 WL 1523186, at *4; *see also Tenorio*, 543 S.W.3d at 775 (TTCA waives immunity only if "notice as prescribed by [the] statute is given"). Importantly, section 101.101 notice "is never presumed and cannot be waived." *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); *Jefferson*

13

*Cty. v. Farris*, 569 S.W.3d 814, 820–21 (Tex. App.—Houston [1st Dist.] 2018, pet. filed).

The start date of the six-month notice period—"the day that the incident giving rise to the claim occurred"—is not defined by the TTCA, nor has the Texas Supreme Court or this Court comprehensively defined it. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(a) ("A governmental unit is entitled to receive notice of a claim against it under this chapter *not later than six months after the day that the incident giving rise to the claim occurred*." (emphasis added)). However, we have explained that there "can be more than one 'incident giving rise to the claim' for purposes of section 101.101(a), and the last incident essential to the existence of a claim triggers the statute's notice period." *Jefferson Cty.*, 569 S.W.3d at 821.

UTHSCH asserts that Texas Civil Practice and Remedies Code section 101.101(a)'s six-month notice period began to run on February 21, 2010, i.e., the date that Owens came to the Emergency Department at Memorial Hermann and received purportedly negligent medical care and treatment from Dr. Totz. And because UTHSCH did not have actual notice of Owens's claims, Owens was required to provide it was notice under section 101.101(a) on or before August 21, 2010. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(a), (c).

UTHSCH's argument is generally consistent with other health-care-liability cases in which Texas courts have determined that "the incident giving rise to the

14

[plaintiff's] claim" is the alleged negligent act or omission committed by a health care provider that caused the plaintiff's harm. *See, e.g.*, *Univ. of Tex. Sw. Med. Ctr. v. Estate of Arancibia ex rel. Vasquez–Arancibia*, 324 S.W.3d 544, 546, 549–50 (Tex. 2010) ("incident giving rise" to medical-negligence claim was negligent conduct by doctor during surgery); *Univ. of Tex. Health Sci. Ctr. at Hous. v. Cheatham*, No. 14-14-00628-CV, 2015 WL 3878111, at *1, *4–5 (Tex. App.—Houston [14th Dist.] June 23, 2015, no pet.) (mem. op.) ("incident giving rise" to plaintiff's health-care-liability claim against UTHSCH was health care provider's negligent conduct in leaving needle inside plaintiff during surgery); *McQueen*, 431 S.W.3d at 753, 760–62 ("incident giving rise" to plaintiff's health-care-liability claim against UTHSCH was negligent conduct by doctor during surgery); *Garrett v. Harris Cty. Hosp. Dist.*, No. 01-07-00836-CV, 2008 WL 3522258, at *3 (Tex. App.—Houston [1st Dist.] Aug. 14, 2008, no pet.) (mem. op.) ("incident giving rise" to plaintiff's medical-negligence claim was health care provider's breach of standard of care by failing to communicate biopsy results). Thus, in such instances, notice under section 101.101(a) must be provided within six months of the allegedly negligent act or omission committed by the health care provider that caused the plaintiff's harm. *See, e.g.*, *McQueen*, 431 S.W.3d at 753, 757 (proper notice to UTHSCH required within six months of date of negligent conduct during surgery).

In her third amended petition, Owens alleged that when she came to the Emergency Department at Memorial Hermann on February 21, 2010, complaining of a headache and blurry vision, Dr. Totz, "who was employed by . . . UTHSCH," provided her with negligent medical care and treatment. On that day, Dr. Totz diagnosed Owens with a headache, but he did not perform any diagnostic testing. Later, Owens sustained permanent damage to her optic nerves and became "completely blind in both of her eyes" due to certain undiagnosed "internal problems." According to Owens, UTHSCH "is responsible for her injuries jointly and severally under the doctrines of respondeat superior, corporate negligence, apparent or ostensible agency, agency by estoppel, and violation of non-delegable duties performed by" Dr. Totz on February 21, 2010. And Owens did not allege that anyone other than Dr. Totz connects UTHSCH to her injuries.

Owens asserts that she had no obligation to provide UTHSCH with notice of her claims within six months of Dr. Totz's purportedly negligent medical care and treatment. Instead, according to Owens, Texas Civil Practice and Remedies Code section 101.101(a) only required her to provide notice to UTHSCH after Dr. Totz, on August 9, 2017, moved for dismissal and for the substitution of UTHSCH as the defendant in his place. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.101(a), 101.106(f). This is because Owens "had no claim against" UTHSCH until Dr. Totz filed his motion to dismiss. And, as such, Owens asserts that August 9, 2017

16

"must necessarily be 'the day that the incident giving rise to the claim'" occurred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a).

A suit against a governmental unit's employee "for conduct within the general scope of" the employee's employment and in which the governmental unit could have been sued under the TTCA is "considered to be against the employee in the employee's official capacity only." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 401–02 (Tex. 2011) (quoting TEX. CIV. PRAC. & REM. CODE § 101.106(f)). In other words, a suit against the employee in the employee's official capacity is not a suit against the individual personally. *Id.* Rather, such a suit, in reality, is a suit against the governmental unit, which constitutes the real party in interest. *Id.* ("[W]hen the [plaintiffs] sued [the employee], they sued the [governmental unit].").  As the Texas Supreme Court as explained, because the suit "actually seeks to impose liability against the governmental unit rather than on the individual specifically named," from the beginning, it is, "in all respects other than name, a suit against the [governmental unit]." *Id.* Thus, although Texas Civil Practice and Remedies Code section 101.106(f) requires a governmental unit's substitution as the defendant, upon an employee's motion in a suit previously filed only against the governmental unit's employee, in actuality, the suit was already, "a suit against" the governmental unit, and there is "no change in the real party in interest." *Id.*;

17

*see also Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 356–57 (Tex. 2013).

Here, Owens's claims against Dr. Totz from the start arose from his conduct within the general scope of his UTHSCH employment. And this is evident not only in the allegations contained in her multiple petitions, but also because, in response to Dr. Totz's section 101.106(f) motion to dismiss, Owens did not contest the motion but instead voluntarily amended her petition, removed Dr. Totz as a defendant, and substituted, in his place, UTHSCH, noting that "UTHSCH[] is [the] governmental unit[] who employed [Dr. Totz], a physician licensed to practice in the State of Texas."

Because Owens's suit initially filed against Dr. Totz in his official capacity was, in reality, a suit against UTHSCH all along, it is illogical that "the incident giving rise to [Owens's] claim[s]" against UTHSCH would be Dr. Totz's filing of his section 101.106(f) motion to dismiss by which he sought merely the substitution of UTHSCH, for himself, as the defendant in Owens's health-care-liability case. *See Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011); *Univ. of Tex. Health Sci. Ctr. at San Antonio*, 332 S.W.3d at 401–02. Instead, we conclude that the "incident giving rise to the [Owens's] claim[s]," which triggered her six-month time period to provide section 101.101 notice to UTHSCH, occurred on February 21, 2010, i.e., the date that Dr. Totz, a UTHSCH

18

employee, purportedly provided negligent medical care and treatment to Owens. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a); *see, e.g.*, *McQueen*, 431 S.W.3d at 753, 757 (proper notice to UTHSCH required within six months of date of negligent conduct during surgery). Thus, pursuant to Texas Civil Practice and Remedies Code section 101.101, Owens was required to provide UTHSCH notice of her claims by August 23, 2010, unless UTHSCH had "actual notice" of Owens's claims. *See id.* § 101.101(a), (c); *see also* TEX. R. CIV. P. 4 ("Computation of Time").

UTHSCH attached to its plea to the jurisdiction and motion to dismiss the affidavit of Catherine Thompson, the Healthcare Risk Manager for UTHSCH. In her affidavit, Thompson testified that her job responsibilities include the "receiving, investigating, evaluating and monitoring [of] health care liability claims" against UTHSCH and the subsequent investigation of such claims. According to Thompson, "if a department or individual at UTHSCH," other than one who is "associated with the Risk Management department," receives a claim, that claim is "routine[ly] and customar[ily] . . . forward[ed] . . . to [the] Risk Management [department]." When UTHSCH receives a health care liability claim, identifying information related to the claim, including the date that the claim is received, the name of the claimant, and the name of the health care provider "upon whose care the claim is based," is entered into a "database." Related to the instant

19

case, Thompson explained that she had searched the Risk Management department's database, and UTHSCH had no record or notice of any health care liability claim filed by Owens, related to Dr. Totz's purportedly negligent medical care and treatment, before May 9, 2012, including no notice of "the injuries or damages" sustained by Owens or of "the time and the place of the incident[] alleged" by Owens. Thus, Thompson testified that within "six . . . months after the alleged incident[] giving rise to . . . Owens'[s] claims[, which] occurred (in February 2010)," UTHSCH had no actual notice and "no information that UTHSCH or any employee of UTHSCH was [either] responsible for" or "at fault for producing or causing any of the injuries or damages claimed by" Owens, about "the time and the place of the incident[] alleged by" Owens, or about the incident alleged in Owens's suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a), (c).

Owens asserted in her response to UTHSCH's plea to the jurisdiction and motion to dismiss that UTHSCH first had notice of her claims in May 2012, after Dr. Totz was served with citation.[14] And as Owens acknowledged in her response, "[t]his was long after August . . . 2010, the date [that] UTHSC[H] asserts that it was entitled to notice" under Texas Civil Practice and Remedies Code section

---

[14] In her appellee's brief, Owens concedes that "UTHSC[H] first received notice on May 9, 2012, after Dr. Totz was served with citation in this case" and "more than five (5) years prior to the event giving rise to Owens'[s] claims against UTHSC[H]."

20

101.101. Notably, Owens brought forth no evidence that UTHSCH had actual notice of her health care liability claims or received any notice from Owens related to her claims prior to May 2012. *See id.*

As previously stated, pursuant to Texas Civil Practice and Remedies Code section 101.101, Owens was required to provide UTHSCH notice of her claims by August 23, 2010, unless UTHSCH had "actual notice" of Owens's claims. Here, Owens has failed to raise a fact issue that she timely provided the required notice or that UTHSCH had actual notice of her health care liability claims prior to August 23, 2010. *See id.*; *Miranda*, 133 S.W.3d at 227–28; *see also* TEX. R. CIV. P. 4.

Accordingly, we hold that the trial court erred in denying UTHSCH's plea to the jurisdiction and motion to dismiss.

We note that in her appellee's brief, Owens raises additional arguments to support her assertion that the trial court did not err in denying UTHSCH's plea to the jurisdiction and motion to dismiss. Owens first asserts that UTHSCH has waived "[a]ny claim that [it] enjoys sovereign immunity in this case" "by conduct" because, although Dr. Totz in May 2012 was aware that he could, pursuant to Texas Civil Practice and Remedies Code section 101.106(f), substitute UTHSCH for himself as the defendant in Owens's health-care-liability case, Dr. Totz did not file his section 101.106(f) motion to dismiss until August 9, 2017. And still yet,

21

after becoming a party to Owens's suit, UTHSCH waited months to file its plea to the jurisdiction and motion to dismiss. Thus, according to Owens, Dr. Totz's and UTHSCH's "delay-causing activity in this action is so inequitable, egregious, and prejudicial to Owens'[s] ability to pursue her claims . . . that UTHSC[H] has waived its sovereign immunity."

As previously explained, the notice requirement set forth in Texas Civil Practice and Remedies Code section 101.101 is jurisdictional. *City of Dall. v. Carbajal*, 324 S.W.3d at 537–38; *Garza*, 2019 WL 1523186, at *4. And section 101.101 notice "is never presumed and cannot be waived." *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44; *Jefferson Cty.*, 569 S.W.3d at 820–21. Owens has not directed this Court to any authority holding that the jurisdictional notice-requirement set forth in section 101.101 may be waived "by conduct." *Cf. Cheatham*, 2015 WL 3878111, at *2 n.4 (although UTHSCH waited four years to deny receiving section 101.101 notice, notice was jurisdictional and could not be waived). Further, all of the conduct forming the basis of Owens's waiver-by-conduct argument occurred after Owens had already failed to comply with section 101.101's jurisdictional notice requirement. Stated differently, none of the conduct by Dr. Totz or UTHSCH about which Owens now complains caused Owens to initiate her suit against Dr. Totz in his official capacity without providing the jurisdictional-required notice to UTHSCH. Additionally, we note

22

that Owens never challenged Dr. Totz's section 101.106(f) motion to dismiss, and she voluntarily amended her petition to substitute UTHSCH for Dr. Totz as the defendant in her case.

Finally, Owens asserts that if UTHSCH "retains sovereign immunity," Dr. Totz, through his purported delay-causing actions, "has waived any rights afforded [to] him" under Texas Civil Practice and Remedies Code section 101.106; Owens's "suit should [therefore] be considered to be against [Dr.] Totz in his individual capacity"; and Owens "should be allowed to amend her pleadings to re-join [Dr. Totz] as a defendant under the doctrines of laches and/or equitable tolling."

On August 9, 2017, Dr. Totz filed his section 101.106(f) motion to dismiss, asserting that at the time that Owens received the allegedly negligent medical care and treatment provided by him on February 21, 2010, he was an employee of UTHSCH, a governmental unit. And under section 101.106(f), the employee of a governmental unit must be dismissed from a suit, and the governmental unit substituted as the defendant in his place, when the suit is "based on conduct within the general scope of that [governmental] employee's employment" and when suit "could have been brought . . . against the governmental unit." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). The trial court did not rule on Dr. Totz's motion to dismiss, however, because Owens, in response to Dr. Totz's motion, voluntarily

23

dismissed Dr. Totz from her suit and named UTHSCH as the defendant in Dr. Totz's place when she filed her second amended petition. *See Hitz v. Lally*, 305 S.W.3d 761, 767–68 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see also Wren v. Tex. Emp't Comm'n*, 915 S.W.2d 506, 508 (Tex. App.—Houston [14th Dist.] 1995, no writ.) ("Dropping a defendant from a pleading serves to nonsuit that defendant.").

Texas Civil Practice and Remedies Code section 101.106(a) states: "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a). Here, Owens filed "a suit . . . against a governmental unit," pursuant to section 101.106(a), when she filed her second amended petition naming UTHSCH as the defendant in her health-care-liability case in lieu of Dr. Totz. *See Hintz*, 305 S.W.3d at 768; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a). And Owens's suit against UTHSCH "immediately and forever bars any suit by [her] against any individual employee of [UTHSCH] regarding the same subject matter." *See Hintz*, 305 S.W.3d at 768 (internal quotations omitted); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a). In other words, under section 101.106(a), Owens's election to sue UTHSCH in her second amended

petition is irrevocable and forecloses any subsequent attempt by Owens to sue Dr. Totz after having sued only UTHSCH in her second amended petition. *See Hintz*, 305 S.W.3d at 768–71 ("[O]nce the plaintiff makes an 'irrevocable election' by suing only the employer, there is no statutory mechanism to change targets and sue the employee instead."); *see also Metro Transit Auth. of Harris Cty. v. Baltazar*, No. 01-11-00641-CV, 2012 WL 252153, at *3–4 (Tex. App.—Houston [1st Dist.] Jan. 26, 2012, no pet.) (mem. op.); *Kamal v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 333 S.W.3d 676, 687–88 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Accordingly, to the extent that Owens requests that this Court "reinstate her claims [against Dr.] Totz and to enter a finding [that] her suit against [Dr. Totz] may proceed against him in his individual capacity," we decline to do so. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a); *Hintz*, 305 S.W.3d at 768–71.

We sustain UTHSCH's sole issue.

## Conclusion

We reverse the trial court's order denying UTHSCH's plea to the jurisdiction and motion to dismiss and render judgment dismissing Owens's claims against UTHSCH for lack of jurisdiction.


Julie Countiss
Justice

Panel consists of Justices Lloyd, Landau, and Countiss.